UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


JERRY B.[1],                          )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )        No. 1:19-cv-00982-MJD-SEB
                                     )
ANDREW M. SAUL,                      )
                                     )
                    Defendant.       )


**ENTRY ON JUDICIAL REVIEW**


Claimant Jerry B. requests judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for Social Security

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See*

42 U.S.C. §423(d).

**I. Background**

On April 30, 2015, Claimant applied for DIB, alleging onset of disability as of August

31, 2011.[2] [Dkt. 10-5 at 2.] Claimant's date last insured was June 30, 2018.[3] [Dkt. 10-2 at 21.]

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] The parties set forth Claimant's medical background in their briefs. [*See* Dkt. 14 at 6 & Dkt. 15 at 2.] Because these facts involve Claimant's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate only specific facts as needed below.

[3] The ALJ noted that "[a]t the time of the reconsideration determination, the record indicated that the claimant met the disability insured status requirements only through June 30, 2017.

Claimant's application was initially denied on June 8, 2015, and again upon reconsideration on September 28, 2015. [Dkt. 10-4 at 2 & Dkt. 10-4 at 7.] Administrative Law Judge Tammy Whitaker ("ALJ") held a hearing on Claimant's application in July, 2017. [Dkt. 10-2 at 38.] On November 29, 2017, the ALJ issued her determination that Claimant was not disabled. [*Id*. at 32.] The Appeals Council then denied Claimant's request for review on January 8, 2019, [*id*. at 2], which made the ALJ's decision the final decision of the Commissioner. Claimant then timely filed his Complaint in this Court seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II.  Legal Standard

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the

---

However, information now in the record indicates that the claimant had sufficient earnings from employment in third and fourth calendar quarters of 2016 and the first calendar quarter in 2017 to extend the claimant's insured status through the date of this decision." [*See* Dkt. 10-2 at 22.]

claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520 (2012). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ's findings of fact are conclusive and this Court must uphold them "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2007). This Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may determine only whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000)); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that there was substantial evidence supporting the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). For the purpose of judicial review, "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.; Gudgel v. Barnhart*, 345 F. 3d 467, 470 (7th Cir. 2003) (internal quotation marks omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). While the ALJ must base her decision on all of the relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and must "provide some glimpse into her reasoning" to "build an accurate and

logical bridge from the evidence to her conclusion," she need not "address every piece of evidence or testimony." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Claimant had engaged in substantial gainful activity during part of the period from his alleged onset date of August 31, 2011 through May, 2017. [Dkt. 10-2 at 22.] At step two, the ALJ determined that Claimant had the following severe impairments: Psychosis, not otherwise specified, a Bipolar I Disorder with a history of psychotic features, Bipolar Disorder, Depression, history of Alcohol Abuse, and a Generalized Anxiety Disorder. [Dkt. 10-2 at 22.] At step three, however, the ALJ found that Claimant "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." [Dkt. 10-2 at 24.] In making this determination, the ALJ considered Listings 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar and related disorders), and 12.06 (Anxiety and obsessive-compulsive disorders). [*Id.*] The ALJ then analyzed Claimant's RFC and concluded that he had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [Claimant] is limited to simple, routine, and repetitive work. He is limited to a work environment free of fast-paced production requirements. He is limited to work that involves only occasional interaction with the public, coworkers and supervisors. He is limited to work that allows the individual to be off task ten percent of the workday in addition to regularly scheduled breaks. He is limited to work that involves no more than occasional exposure to respiratory irritants such as fumes, odors, dusts and gases as a precaution for his non severe impairment of asthma.

[*Id.* at 27.] In determining the RFC, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the above-alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the

record for the reasons explained in this decision." [Dkt. 10-2 at 29.] At step four, the ALJ found that Claimant was unable to perform his past relevant work as a heavy equipment mechanic and a lawn mower mechanic. [*Id*. at 30.] The ALJ proceeded to step five and, based on the testimony from a vocational expert ("VE"), concluded that Claimant could perform several jobs that exist in significant numbers in the national economy, such as hospital cleaner, industrial cleaner, and motor vehicle assembler. [*Id*. at 31.] Based on these findings, the ALJ concluded that Claimant was not disabled. [*Id.* at 32.]

## IV. Discussion

The central issue is whether substantial evidence supports the ALJ's determination that Claimant is not disabled. Claimant advances two arguments for reversing the ALJ's decision: (1) the ALJ erred by failing to adequately consider the record evidence and articulate whether Claimant's mental impairments met or equaled the paragraph C criteria for Listings 12.03, 12.04, and 12.06; and (2) the ALJ erred by failing to account for her own findings of moderate limitations under the paragraph B criteria for the relevant listings under 12.00 in her RFC determination and in her hypothetical posed to the VE. These arguments are addressed, in turn, below.

### A. Paragraph C criteria under Listings 12.03, 12.04, and 12.06

Claimant asserts that the ALJ erred by ignoring relevant record evidence and testimony that supported a finding that Claimant met or equaled the criteria for paragraph C[4] under Listings

---

[4] The Court notes that the relevant listings under 12.00 require meeting the criteria of either paragraph A and paragraph B, or of paragraph A and paragraph C. *See* 20 C.F.R., Pt. 404, Subpt. P, App'x 1, §§ 12.03, 12.04, 12.06. The ALJ did not expressly address the paragraph A criteria, which requires medical documentation of specified symptoms or conditions, but rather found that, even assuming Claimant met the requirements of paragraph A, Claimant had failed to meet the requirements of either paragraph B or paragraph C. [Dkt. 10-2 at 26.] Accordingly, the Court will focus its analysis on paragraph C, which is identical for Listings 12.03, 12.04, and 12.06. *See* 20 C.F.R., Pt. 404, Subpt. P, App'x 1, §§ 12.03, 12.04, 12.06.

12.03, 12.04, and 12.06.  In response, the Commissioner argues that the ALJ provided "more than a 'mere scintilla'" in explaining her findings regarding Claimant's mental RFC determination.  [Dkt. 15 at 11] (internal quotation marks omitted).  The Court disagrees.

The "paragraph C" criteria for the relevant listings under 12.00 are used "to evaluate mental disorders that are 'serious and persistent,'" recognizing that "mental health interventions may control the more obvious symptoms and signs of [the claimant's] mental disorder."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1) (internal quotation marks omitted).  A mental disorder meets the paragraph C criteria if there is:

> a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> > 1. Medical treatment, mental health therapy, psychosocial support(s) or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder; and
> > 2. Marginal adjustment, that is . . . minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life.

*See id*. §§ 12.03(C), 12.04(C), 12.06(C) (citations and emphasis omitted).  If the claimant's impairment meets that description, the claimant must establish the presence of one of the following:

> 1. repeated episodes of decompensation, each of extended duration; or
> 2. residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. current history of one or more years' inability to function outside a highly supportive living arrangement, with indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C).  In determining that Claimant did not meet the criteria for paragraph C, the ALJ found:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant had only marginal

adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that were not already part of the claimant's daily life.

[Dkt. 10-2 at 26.]

Whether a listing is met or equaled is an "ultimate legal question" for the ALJ. S.S.R. 96-6P, 1996 WL 374180; *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). Although the Court must give deference to the ALJ's factual determinations underlying her listing assessment, the ALJ must consider all of the evidence, particularly evidence contrary to the determination. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (quoting *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999)). To demonstrate that the ALJ's listing conclusion was not supported by substantial evidence, the claimant must identify record evidence that was misstated or ignored, and that could support a finding that claimant met or equaled the criteria. *See*, *e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002).

The ALJ concluded that the evidence in Claimant's case "fails to establish the presence of the 'paragraph C' criteria." [Dkt. 10-2 at 26 (internal quotation marks omitted).] In making this finding, the ALJ acknowledged the paragraph C requirements, but failed to discuss a single piece of evidence. At step three of the sequential analysis, however, "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Here, the ALJ made no findings and provided no discussion regarding the paragraph C criteria under the relevant listings of 12.00. The Court therefore simply cannot determine from the ALJ's opinion how she concluded that Claimant's impairments did not meet or equal the paragraph C criteria.

Claimant points to record evidence and testimony that would support a finding that he equaled or met the paragraph C criteria for the relevant listings under 12.00. Claimant cites to evidence that indicates his affected disorders existed for more than two years and that he had

relied on mental health treatments, including therapy and medication, on an ongoing basis to diminish the symptoms of his bipolar disorder. [*See* Dkt. 10-2 at 50 (Claimant testifying that he took "seven or eight different medications that just were not working, at all"); Dkt. 10-2 at 54 (Claimant testifying that, in June 2012, he had "spent about a month at Community North psychiatric ward"); Dkt. 10-2 at 57 (Claimant reporting that he had "electric shock treatments" when he was younger for his mental health); Dkt. 10-10 at 56 (Progress Notes by Beth Delambo, a clinical nurse specialist, noting that Claimant had a "long history of depression episodes, including treatment at Central States-series of [electroconvulsive therapy] twice"); Dkt. 10-8 at 10 (Dr. Bojrab reporting that Claimant had a "history of depression, ultimately leading to [electroconvulsive therapy]"); Dkt. 10-22 at 70 (May 2017 Community Health Network record indicating that Claimant was admitted due to his symptoms of bipolar disorder, with a current episode manic without psychotic feature); Dkt. 10-26 at 4 (May 2017 Options Discharge Summary reporting that Claimant's discharge diagnosis included symptoms of bipolar affective disorder type 1 manic episode with psychotic features, generalized anxiety disorder, and impulse control disorder).]

As for the "marginal adjustment" requirement under paragraph C, Claimant points to evidence to show that he has minimal capacity to adapt to the changes in his environment. [*See* Dkt. 10-8 at 74 (May 2012 Inpatient Initial Evaluation indicating that, due to Claimant's mental condition, he had decreased functioning, was not eating, was confused, and had delusional thoughts including the desire to kill himself); Dkt. 10-11 at 26 (March 2015 Progress Note noting that Claimant had poor hygiene and was unable to keep a job due to his mental condition); Dkt. 10-2 at 56 (Claimant testifying that his mental health medications impacted his daily activities); Dkt. 10-6 at 51 (Claimant noting that he had consistently required reminders to take his

medicine); Dkt. 10-6 at 75 (Claimant reporting that his depressive episodes had increased since his father's death in 2012, the loss of his house, and his filing for bankruptcy).]

Claimant also contends that he has difficulty functioning outside of a "highly supporting living arrangement." The ALJ relied on Claimant's mental health treating physicians, Dr. Pierce and Dr. Cecil, stating:

> In an assessment dated May 28, 2015, the claimant's treating mental health professionals (D. Pierce L.M.H.C. and psychiatrist J. Cecil, M.D.) indicated that the claimant's personal grooming and appearance was within normal limits. His affect was bland, and he did not volunteer much information. However, his thought processes were linear, logical and goal-directed. His memory, abstract thinking, and judgment were intact. He was able to do the "serial seven subtraction" test in thirty seconds with no errors. The mental health professionals observed that the claimant did not socially interact unless others initiated. However, he believed that he was able to get along with coworkers and supervisors. They believed that the claimant was able to attend to a simple work routine on a consistent basis. However, they thought that he would think he could do better than simple work. They said that the claimant was compliant with treatment and that prognosis was good. The claimant had not reported any adverse side effects from medication.

[Dkt. 10-2 at 25.] Dr. Pierce and Dr. Cecil also opined, however, that Claimant's daily activities include "activities around the house if told to do them but is not able to see things that need to be done." [Dkt. 10-12 at 17.] With regard to Claimant's ability to socially interact, they opined that "Claimant usually does not socially interact with others unless they initiate," and that Claimant "gets along well with co-workers and supervisors, but is unable to keep a job." [Dkt. 10-12 at 17.] They further reported that Claimant is "easily overwhelmed." [Id.] Although the ALJ relied on the treating physicians' opinions to support her conclusion that Claimant could sustain simple work, the treating physicians' opinions in their entirety suggest that Claimant required work under close supervision, required reminders about when to complete tasks, and was easily overwhelmed by tasks due to his bipolar disorder and by his other mental limitations.

The ALJ further relied on the September 2015 assessment made by the state agency psychological consultant, F. Kladder, and concluded that "no State agency psychological consultant concluded a mental listing is medically equaled." [Dkt. 10-2 at 26.] F. Kladder reported in September 2015 that Claimant's level of severity of functioning "appear[s] partially credible" given that his "attention/concentration are moderately impacted but appear reasonable for semiskilled tasks." [Dkt. 10-3 at 20.] F. Kladder further opined that Claimant "can relate on at least a superficial basis and on an ongoing basis with co-workers and supervisors," and that he can "attend to tasks for a sufficient period of time to complete tasks." [*Id.*] An ALJ should not "rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018). "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). The 2015 state agency assessment upon which the ALJ relied did not have the benefit of the updated record, which included reports on Claimant's hospital stay from April to May 2017 as a result of his increased symptoms of bipolar disorder. The ALJ's discussion of the medical evidence following the 2015 state agency review further underscores the need for expert assistance in interpreting medical signs. If the state agency physician had reviewed Claimant's medical records after 2015, including the records from the April to May 2017 hospitalization due to increased symptoms of Claimant's bipolar disorder, it could have affected the Agency's assessment.

The ALJ also noted that Claimant's mental impairments were well-controlled when taking his medication, but when Claimant stopped his mental health services in mid-2016 and stopped taking his medications, he "gradually decompensated to the point he required

hospitalization on April 28, 2017." [Dkt. 10-2 at 25.] As the Seventh Circuit noted, "people with serious psychiatric problems are often incapable of taking their prescribed medications consistently." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). And the medication of the sort Claimant[5] has been taking for some time now "often produce[s] serious side effects that make patients reluctant to take them." *Id.* (citing *Spiva v. Astrue,*628 F.3d 346, 351 (7th Cir. 2010)). The Seventh Circuit has also repeatedly faulted ALJs for having a general "lack of understanding" of complicated impairments such as bipolar disorder, schizophrenia, and PTSD. *See Kangail v. Barnhart,* 454 F.3d 627 (7th Cir. 2006); *Bauer v. Astrue*, 532 F.3d 606 (7th Cir. 2008); *Larson v. Astrue*, 615 F.3d 744 (7th Cir. 2010); *Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010); *Jelinek v. Astrue*, 662 F.3d 805 (7th Cir. 2011). Similar to these cases, it was an error for the ALJ to attach too much weight to Claimant's ability to hold down a job for a period of time while taking his medication. On remand, the ALJ should reassess the treating physicians' opinions when evaluating whether Claimant is able to function outside of a highly supportive living environment under the paragraph C criteria for the relevant listings under 12.00.

---

[5] As the Seventh Circuit has recognized, "[a] person suffering from [bipolar] disorder has violent mood swings, the extremes of which are mania—a state of high excitement in which he loses contact with reality and exhibits bizarre behavior—and clinical depression, in which he has great difficulty sleeping or concentrating." *Bauer v. Astrue*, 532 F.3d 606, 607-08 (7th Cir. 2008) In *Kangail*, the Seventh Circuit explained that, although bipolar disorder, in theory, is "treatable by drugs," several factors make treatment more difficult in practice. One barrier is that Claimant "may require a complex drug regimen to deal with both the manic and the depressive phases of the disease." *Kangail v. Barnhart,* 454 F.3d 627, 630 (7th Cir. 2006). Another is that the illness itself "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Id.* For these and other reasons, the Seventh Circuit has cautioned ALJs to be careful in analyzing whether medication will work over an extended period. *See Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("we have often observed that bipolar disorder [ ] is by nature episodic and admits to regular fluctuations **even under proper treatment**.") (emphasis added). Moreover, the Seventh Circuit noted, people with mental illness have good days and bad days, and so a "snapshot of any single moment says little about [their] overall condition." *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011).

For the reasons set forth above, remand is required. On remand, the ALJ shall obtain an updated medical opinion regarding whether Claimant met or equaled the relevant listings prior to his date last insured. The ALJ also shall evaluate and reassess the evidence of the record, and articulate the reasons for her findings with regard to whether Claimant's mental limitations met or equaled the paragraph C criteria for the relevant listings under 12.00(C) during the relevant time period.

B. Paragraph B criteria under Listings 12.03, 12.04, and 12.06

Claimant also asserts that the ALJ failed to properly address the paragraph B criteria for the relevant listings under 12.00 in both the hypothetical question posed to the VE and in her RFC determination, despite having found Claimant to have moderate limitations. [Dkt. 14 at 14.] On remand, the ALJ shall take care to account for all of the Claimant's limitations in making her RFC determination. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record . . . . More specifically, the question must account for documented limitations of 'concentration, persistence or pace'") (internal quotation marks & citations omitted); *Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to [the ALJ's] RFC finding, [the court] [has] likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace.") (quoting *Winsted v. Berryhill*, 923 F.3d 477 (7th Cir. 2019)) (internal quotation marks omitted).

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and

**REMANDED** for further proceedings.

SO ORDERED.


Dated: 19 FEB 2020

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana


Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.